This is a suit brought by the plaintiff insurance company, as subrogee, to recover from defendant an amount which it had to pay to its insured, Mike Donlon, for a loss sustained by him when a plate glass in front of a place of business owned by him at 528 Jefferson Street in the City of Lafayette was broken by an advertising sign which had been carried by the wind from where it was attached to a lamp post in front of the defendant's moving picture theatre, thus causing the damage that had to be paid. The loss amounted to $205.36. There were two other defendants in the case but they were dismissed on an exception of no cause of action and are no longer parties to the suit.
After alleging that it had insured the plate glass and had to pay the loss and also that it had become subrogated to its assured's cause of action, plaintiff avers that it has no knowledge as to the origin and cause of the damage, but that the origin and cause of its occurrence ought to be within the knowledge of the defendant, his agents or employees who were present when the sign in front of his theatre fell, and were in sole control and management thereof. It avers further that it cannot be expected to have any knowledge as to the cause or causes of the falling sign and the damage which it may cause whereas the defendant must be assumed to be fully informed of *Page 754 
the cause of such accident which is not of such character as usually happens when due care is exercised. These allegations were made, no doubt, with the idea of bringing the case within the rule of res ipsa loquitur.
The defendant Latiolais appeared in answer and after admitting plaintiff's capacity as subrogee, denies practically all the other allegations of the petition and further alleges that between the hours of three and four o'clock on the afternoon of November 28, 1942, a sudden gust of wind, of cyclonic intensity, swept down Jefferson Street in the City of Lafayette, on which his place of business is located. He avers that on that afternoon there was, as had been for several months prior thereto, an advertising sign used in connection with his moving picture theatre, securely attached to a light post in front of the theatre, situated some 20 feet from the corner post of the show case owned by plaintiff's assured and on which the plate glass was broken. He avers that although the sign was securely attached to its mooring, as a result of the violent force exerted against it by the wind, it was torn from the post and dashed against the plate glass some 20 feet away striking it some 3 feet above the sidewalk and with a force sufficient to bend the angle iron supporting it at a right angle with another plate glass. He avers that the damage which plaintiff suffered was occasioned exclusively by the operation of the forces of nature and not through any negligence on his part and consequently he denies any liability whatever.
The case was submitted to the trial judge on an agreed statement of facts after a consideration of which, as well as the law involved, he rendered judgment in favor of the plaintiff and against the defendant for the full amount as prayed for. In due time defendant took and perfected this appeal.
Although plaintiff had not so alleged, under the agreed statement of facts, a city ordinance of the Board of Trustees of the City of Lafayette was introduced in evidence and in addition to the other pleas on which it sought to hold the defendant liable, plaintiff contended that he had violated the provisions of that ordinance and that such violation further rendered him liable.
In a written opinion, the district judge stated that he had not been referred to and was unable to find any case in which the doctrine of res ipsa loquitur had been applied in connection with damage caused by the falling of an advertising sign. He stated further that he did not think that it made much difference whether the rule applied or not as under it the only difference that arose was in relation to the burden of proof. If the doctrine did not apply, then the burden remained on the plaintiff to show negligence on the part of the defendant and if it did, the burden of explanation rested on the defendant. He was of the opinion that the only dispute in the case concerned the nature and intensity of the storm or of the wind that tore the sign from the post to which it was fastened, and as he concluded that it was one of no more velocity or unusual proportion than is normally to be expected in the surrounding community at that time of the year, defendant should have guarded against the probability of its occurrence, and had his sign so fastly secured that it would not be loosened and cause damage in the manner that it did.
With regard to the city ordinance invoked by the plaintiff, the district judge concluded that the damage occasioned was not of the kind which the ordinance was intended to avoid and therefore defendant could not be held liable under any of its provisions. After reading the ordinance we readily agree with him on this point as certainly its provisions were not meant to guard against any happenings such as occurred in this case. The first provision refers to the stringing of streamers, banners, signs, etc., across any public street, which was not the manner in which the sign in this case was placed, and therefore, could not be considered in any way as a violation of that provision, and the second part of the ordinance refers to the defacing or desecrating of any sidewalk, public building, etc., in the city and what the plaintiff did in attaching his sign to a lamp post certainly did not have the effect of or result in a violation of that part of the ordinance.
In the case of Lopes v. Sahuque, 114 La. 1004, 1005, 38 So. 810, we find authority for the conclusion reached by the trial judge to the effect that a violation of a city ordinance is not sufficient of itself to give rise to an action for damages where the damage claimed is not of the kind which the ordinance was intended to prevent.
We, too, like the district judge have been unable to find any case involving the falling *Page 755 
of an advertising sign in which the doctrine of res ipsa loquitur was applied but we agree with him too that it really makes no difference whether it does or not as ultimately a decision in the case has to rest upon the nature and character of the wind that blew on that afternoon causing the sign to be torn from its mooring and thrown against the plate glass which was broken.
The trial judge concluded from the statement of facts that the wind was nothing more than one of the usual dust storms that occur in that section of Louisiana at that time of the year and that therefore in attaching his advertising sign, the plaintiff should have guarded against a happening of that sort and secured it in such manner that it would not have been detached and cause damage to any person or property.
We are all more or less familiar with the kind of dust cloud or wind which the district judge no doubt had in mind. It comes in the form of a sudden gust of wind of minor intensity gathering a funnel-shaped cloud of dust as it moves along and in a few seconds disperses itself in the atmosphere. Except for the dust which it gathers or the light debris which it sweeps in its path it is hardly noticeable. The district judge refers to their occurrence at the particular time of the year in which this accident happened, that is during the month of November, and infers that that is when they are to be expected. As we know and observe them, they are apt to happen at any period of the year and attract no particular attention.
But from what we learn, from the statement of facts, of the wind movement that took place on Jefferson Street in the City of Lafayette on November 28, 1942, and what happened as a result of it, it was not the ordinary little whirlwind which the district judge seems to think it was. It was of sufficient velocity, as shown, to tear away the advertising sign from the post to which it was fastened and to dash it along the sidewalk more than nineteen feet and then throw it against the angle iron of the plate glass three feet above the level of the sidewalk, bending the angle iron and breaking the glass. The statement also refers to the fact that a police officer of the city who was standing on the street fifty feet away at the time, on noticing the wind, retired into a pool room from where he heard the crash. Certainly, in our opinion, the ordinary little dust storm which we have described is never alarming enough to cause people on the street to seek shelter which is apparently what this police officer did. Moreover, the statement of facts shows that two gentlemen, one of them the manager of the property owner's tenant at the establishment where the plate glass was broken, were playing tennis at Southwestern University at the moment, and, to quote from the statement itself, they "quit playing when the wind arose to too great a velocity to play" and immediately drove to Jefferson Street where the manager learned of the damage. It is also shown that immediately preceding the blow it had not been raining and there was no force in the wind whatever thus indicating that it came up so suddenly that we do not believe that the accident which followed was one that the defendant could reasonably be expected to have anticipated and against which he should have used more than the usual and ordinary care in attaching his advertising sign to the lamp post in front of his theatre.
We are convinced that the damage suffered by the plaintiff's insured, and whose loss it had to pay, was not caused by any fault or negligence on the part of the defendant but resulted from one of nature's irresistible forces which he could not anticipate or guard against and for which he cannot be held liable. In Art. 3556 of the R.C.C., the word "force" is said to mean "the effect of power which can not be resisted" and it is stated further that "those accidents are said to be caused by superior force, which human prudence can neither foresee nor prevent." There is no yardstick we know of by which such force is to be measured and in the case of a windstorm or even a sudden gust of wind it is sufficient if it be of such unusual and intense velocity as is not ordinarily to be expected and demands no extra care or precaution on the part of any one in the usual conduct of his social and business relations with others. Such, in our opinion, was the nature of the wind which blew in Lafayette on the afternoon of November 28, 1942, and the accident which followed it must necessarily be classed as one which was inevitable and which neither human care or prudence nor foresight could possibly prevent.
For the reasons stated the judgment appealed from is hereby annulled set aside *Page 756 
and reversed and it is now ordered that there be judgment in favor of the defendant and against the plaintiff rejecting the latter's demand and dismissing its suit at its costs.